**PORTER | SCOTT**
A PROFESSIONAL CORPORATION
Michael W. Pott, SBN 186156
Derek J. Haynes, SBN 264621
350 University Ave., Suite 200
Sacramento, California 95825
TEL: 916.929.1481
FAX: 916.927.3706
E-mail address: mpott@porterscott.com

Attorneys for Defendants
**CITY OF ELK GROVE, CHRISTOPHER DIAZ, ALI KHALIL, LANCE MCDANIEL, WALLY SMITH, and ROBERT SIMMONS**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMARA DUMAS; RICK DUMAS; KATELIN DUMAS; and KIMBERLY DUMAS; <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF ELK GROVE; Elk Grove Police Officer CHRISTOPHER DIAZ (Badge #127); Elk Grove Police Officer ALI KHALIL (Badge #164); Elk Grove Police Officer LANCE MCDANIEL (Badge #158), Elk Grove Police Sergeant WALLY SMITH (Badge #23), Elk Grove Police Chief ROBERT SIMMONS; and DOES1 through 20; inclusive, <br><br> Defendants. <br>_____/ | CASE NO.  2:09-cv-01573-GEB-JFM <br><br> **DECLARATION OF MICHAEL W. POTT IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT AGREEMENT** <br><br> **Date: December 6, 2010** <br> **Time: 9:00 a.m.** <br> **Court Room: 10** <br><br><br><br><br><br><br><br> Complaint Filed:  06/08/2009 <br> First Amended Complaint File: 8/27/09 |

I, Michael W. Pott, declare the following:

1.     I am an attorney at law licensed to practice before the courts of the State of California and the United States District Court for the Eastern District of California, and am a shareholder with the law firm of Porter Scott, A Professional Corporation, attorneys of record for

{00835186.DOC}                                        1

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

Defendants City of Elk Grove, Christopher Diaz, Ali Khalil, Lance McDaniel, Wally Smith, and Robert Simmons.

2.      Plaintiffs filed suit against the City of Elk Grove, Christopher Diaz, Ali Khalil, Lance McDaniel, Wally Smith, and Robert Simmons on June 8, 2009.   They filed a First Amended Complaint on August 27, 2009.  (A true and correct copy of Plaintiffs' First Amended Complaint is attached hereto as Exhibit A.)  In the Amended Complaint, Plaintiff Tamara Dumas ("Tamara") asserts various state and federal wrongful arrest and excessive force claims against various Defendants. She also asserts state law battery and negligence causes of action against all of the Defendants, as well as *Monell* and supervisory liability claims against the City of Elk Grove, Chief Simmons and Sergeant Smith.   Tamara's husband, Rick, and her two daughters, Katelin and Kimberly, assert a substantive due process claim contending their relationship with Tamara was tainted as a result of the incident.  Katelin asserts negligent and intentional infliction of emotional distress causes of action based on observing Tamara struggle with Diaz.

3.      On July 27, 2010, after several months of discovery, including completion of the depositions of Tamara, Diaz, Khalil and Smith, the parties participated in a full-day private mediation.  The mediator was Ret. Honorable Raul Ramirez.  The mediation lasted into the evening and eventually concluded with Judge Ramirez suggesting that he provide a mediator's proposal. The parties agreed that a mediator's proposal would be appropriate.

4.      Later that evening, Judge Ramirez called and left a voicemail for me with his proposal that the parties resolve the entire case as to all claims brought by all of the Plaintiffs against all of the Defendants for payment by Defendant City of a total of $105,000.

5.      On July 28, 2010, I left Judge Ramirez a voicemail message indicating that Defendants agreed to his proposal.  Later that day, Judge Ramirez called me back to advise me

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

DECLARATION OF MICHAEL W. POTT IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT AGREEMENT

1   that Plaintiffs accepted the proposal.  He also indicated that Plaintiffs' counsel, Stewart Katz, was

2
3   requesting an additional term be added to the agreement – specifically that the City not oppose a

4   petition that would be filed on Tamara's behalf in her criminal case to find that she is factually

5   innocent of the charges for which she was arrested.  The City agreed to this term.   Thereafter,

6   discussions regarding the specific written settlement agreement were held between me and

7   Plaintiffs' counsel, Stewart Katz.

8           6.      On or around August 18, 2010, Stewart Katz informed me that the settlement

9
10   proceeds were to be allocated as follows:   $70,000 to Tamara, $5,000 to Katelin, $5,000 to

11   Kimberly, $0 to Rick and $25,000 to Plaintiff's counsel.  On August 18, 2010, I forwarded the

12   draft settlement agreement to Mr. Katz.  That same day, Mr. Katz requested a few minor changes

13   to the language of the proposed written agreement. The changes were made and another draft of

14   the agreement was sent to him that day.

15           7.      On September 9, 2010, Mr. Katz contacted me and requested a couple of trivial

16   changes to the written agreement – one to make the recital about the allegations in the case mutual

17   and the second to indicate that no party in the case admits to fault (previously the agreement

18   indicated that Defendants did not admit fault by signing the agreement).   Defendants agreed to

19   these minor changes and the agreement was sent to Mr. Katz for his further review on September

20
21   9, 2010.

22           8.      On September 17, 2010, Mr. Katz sent me a letter requesting some additional

23   changes be made to the agreement.  For example, Plaintiffs requested that language be added to

24   state that Mr. Katz would be filing the petition for factual innocence, Mr. Katz would take all steps

25   necessary to dismiss the case and Mr. Katz would make sure the dismissal is filed with the Court.

26   I incorporated some of these trivial changes into the agreement, but did not include the language

27

28

{00835186.DOC}                                    3

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

regarding Mr. Katz filing the petition for factual innocence since whether or not he files the petition has nothing to do with the settlement of the case. A true and correct copy of this most recent settlement agreement is attached hereto as Exhibit B. I also did not include language that Plaintiffs requested be added indicating that they would not be bound by the settlement agreement until the City approves the settlement agreement. This term was not included in the agreement as it was never bargained for by Plaintiffs and was not a material term as expressed at the time the oral contract was formed.

9.    On or about October 8, 2010, Mr. Katz informed me that he was not sure if Plaintiffs were going to sign the settlement agreement. We expressed this concern to the court in the Joint Status Report filed on October 18, 2010. Now, just this week, Mr. Katz has filed a motion to withdraw from the case. To date, Plaintiffs have not signed the settlement agreement.

10.    At no time have Plaintiffs requested that the following material terms be modified in any substantive way: the general release language, the Civil Code section 1542 waiver, clauses indicating that Plaintiffs will be responsible for any liens or taxes, or their agreement that the case will be dismissed and no claims will be brought in the future.

11.    Throughout this case, Plaintiffs have been represented by Stewart Katz. Mr. Katz is an experienced litigator in Federal Court and has handled federal civil rights cases for many years. Mr. Katz had the opportunity to evaluate the strengths and weaknesses of the claims asserted by Katelin and Kimberly over the course of his representation of them for over one year.

12.    True and correct copies of excerpts from the deposition of Tamara Dumas are attached hereto as Exhibit C.

13.    True and correct copies of excerpts from the deposition of Ali Khalil are attached hereto as Exhibit D.

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

DECLARATION OF MICHAEL W. POTT IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT AGREEMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

 I make this declaration on my own personal knowledge except to the facts stated on information and belief.  As to such facts, I believe them to be true.  If called upon to do so, I could and would competently testify about the matters asserted herein.

 I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

 Executed this 5 day of November 2010, at Sacramento, California.

_____
Michael W. Pott

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00835186.DOC}                                      5

DECLARATION OF MICHAEL W. POTT IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT AGREEMENT

EXHIBIT A

**LAW OFFICE OF STEWART KATZ**
STEWART KATZ, State Bar #127425
GUY DANILOWITZ, State Bar #257733
555 University Avenue, Suite 270
Sacramento, California 95825
Telephone: (916) 444-5678

Attorney for Plaintiffs
TAMARA DUMAS, RICK DUMAS,
KATELIN DUMAS, and KIMBERLY DUMAS

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TAMARA DUMAS; RICK DUMAS; KATELIN DUMAS; and KIMBERLY DUMAS, | No: **2:09-CV-01573-GEB-JFM** |
| Plaintiffs, | |
| vs. | |
| | **FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS [42 U.S.C. § 1983] AND STATE LAW** |
| CITY OF ELK GROVE; Elk Grove Police Officer CHRISTOPHER DIAZ (Badge #127); Elk Grove Police Officer ALI KHALIL (Badge #164); Elk Grove Police Officer LANCE MCDANIEL (Badge #158), Elk Grove Police Sergeant WALLY SMITH (Badge #23), Elk Grove Police Chief ROBERT SIMMONS; and DOES 1 through 20, inclusive, | |
| | **JURY TRIAL DEMANDED** |
| Defendants. | |
| _____/ | |

Plaintiffs Tamara Dumas, Rick Dumas, Katelin Dumas, and Kimberly Dumas complain and allege as follows:

**INTRODUCTION**

1.      This complaint arises out of the violent attack on and wrongful arrest of plaintiff Tamara Dumas by City of Elk Grove police officers on July 1, 2008.    The attack was witnessed by plaintiff Katelin Dumas, the then-seven year old daughter of Tamara.  In

1  an effort to justify their actions, these officers then submitted deliberately inaccurate

2  reports of the incident causing plaintiff to be wrongfully charged with resisting an officer.

3  Plaintiff Tamara Dumas suffered severe emotional distress from the attack and wrongful

4  arrest and incurred legal fees defending against this baseless charge, which was dismissed

5  prior to trial.  Plaintiffs Rick Dumas, Katelin Dumas, and Kimberly Dumas suffered the

6  loss of the companionship of their wife and mother because of the psychological and

7  emotional damage that the attack and wrongful arrest inflicted on Tamara.  Plaintiff Katelin

8  Dumas suffered the severe emotional distress, for which she received professional

9  counseling. Through this action plaintiffs seek compensation for their physical injuries,

10  emotional distress, anguish and other injuries including but not limited to criminal defense

11  fees.  Plaintiffs also seek punitive damages against the individual defendants.

12                                          **JURISDICTION**

13          2.      This Complaint seeks, inter alia, damages pursuant to Title 42 U.S.C. sections

14  1983 and 1988, for violation of plaintiffs' civil rights. Jurisdiction is founded upon Title 28

15  U.S.C. sections 1331 and 1343. This Court also has supplemental jurisdiction over

16  plaintiffs' state law claims pursuant to 28 U.S.C. section 1367.

17                                             **VENUE**

18          3.      Plaintiffs' claims, alleged herein, arose in the County of Sacramento,

19  California.  Therefore, venue lies in the Eastern District of California pursuant to 28 U.S.C.

20  section 1391(b)(2).

21                                            **PARTIES**

22          4.      During all times mentioned in this Complaint, plaintiff Tamara Dumas was,

23  and is, a United States citizen.

24          5.      During all times mentioned in this Complaint, plaintiff Rick Dumas was,

25  and is, a United States citizen.  Rick Dumas is the wife of plaintiff Tamara Dumas and they

26  have been married for twenty-four (24) years.

27          6.      During all times mentioned in this Complaint, plaintiff Katelin Dumas was,

28  and is, a United States citizen.  Katelin Dumas is the daughter of plaintiff Tamara Dumas.

1    Katelin Dumas was seven (7) years old at the time of the events alleged herein. Plaintiff

2    Katelin Dumas is a minor and is suing through her mother as guardian, Tamara Dumas.

3        7.    During all times mentioned in this Complaint, plaintiff Kimberly Dumas

4    was, and is, a United States citizen. Kimberly Dumas is the daughter of plaintiff Tamara

5    Dumas. Kimberly Dumas was five (5) years old at the time of the events alleged herein.

6    plaintiff Kimberly Dumas is a minor and is suing through her mother as guardian, Tamara

7    Dumas.

8        8.    Defendant City of Elk Grove is a political subdivision of the State of

9    California, created and existing by virtue of the laws of the State of California.

10       9.    Defendant Robert Simmons, Chief of Police of the Elk Grove Police

11   Department was at all times mentioned herein, the Chief of the Elk Grove Police

12   Department. Defendant Simmons is being sued individually and in his official capacity.

13       10.   Defendant Christopher Diaz (Badge #127) was at all times mentioned

14   herein, a police officer employed by Defendant City of Elk Grove and acting in that

15   capacity. Defendant Diaz is being sued individually and in his official capacity.

16       11.   Defendant Ali Khalil (Badge #164) was at all times mentioned herein, a

17   police officer employed by Defendant City of Elk Grove and acting in that capacity.

18   Defendant Khalil is being sued individually and in his official capacity.

19       12.   Defendant Lance McDaniel (Badge #158) was at all times mentioned herein,

20   a police officer employed by Defendant City of Elk Grove and acting in that capacity.

21   Defendant McDaniel is being sued individually and in his official capacity.

22       13.   Defendant Wally Smith (Badge #23) was at all times mentioned herein, a

23   police Sergeant employed by Defendant City of Elk Grove and acting in that capacity.

24   Defendant Smith is being sued individually and in his official capacity.

25       14.   The true names and identities of defendants Does 1 through 10 are presently

26   unknown to plaintiffs. Plaintiffs allege on information and belief that each of defendants

27   Does 1 through 10 were employed by the City of Elk Grove and/or the Elk Grove Police

28   Department at the time of this incident. Plaintiffs allege that defendants Does 1 through 10,

1 | and each of them, used excessive force upon plaintiff and/or watched and/or encouraged

2 | and/or directed and/or enabled other defendants to use excessive force upon plaintiffs.

3 | Plaintiffs will seek to amend this Complaint as soon as the true names and identities of

4 | Does 1 through 10 have been ascertained.

5 |      15.    The true names and identities of defendants Does 11 through 20 are

6 | presently unknown to plaintiffs. Plaintiffs allege on information and belief that each of

7 | defendants Does 11 through 20 were employed by the City of Elk Grove and/or the Elk

8 | Grove Police Department at the time of this incident. Plaintiffs allege that defendants Does

9 | 11 through 20, and each of them, were responsible for the hiring, training, supervision

10 | and/or conduct of deputies working for the Elk Grove Police Department at the time of the

11 | incident and for the promulgation of policies, practices and customs of the Elk Grove

12 | Police Department at the time of the incident. Plaintiffs allege that each of defendants

13 | Does 11 through 20 is responsible in some manner for the acts and injuries alleged herein.

14 | Plaintiffs will seek to amend this Complaint as soon as the true names and identities of

15 | Does 11 through 20 have been ascertained.

16 |      16.    Defendants, and each of them, to the extent they engaged in any acts or

17 | omissions alleged herein, and unless otherwise indicated by this Complaint, engaged in

18 | such acts and/or omissions under color of state law.

19 | **EXHAUSTION OF GOVERNMENT TORT CLAIM PROCEDURES**

20 |      17.    Plaintiff Tamara Dumas filed a timely government tort claim with the City

21 | of Elk Grove on or about December 4, 2008, regarding the arrest and assault and the related

22 | injuries, as a precondition to the state law claims alleged in this action.

23 |      18.    Tamara's government tort claim was rejected on December 9, 2008.

24 |      19.    On June 30, 2009, Plaintiff Katelin Dumas filed an application for

25 | permission to present a late government tort claim with the City of Elk Grove which was

26 | accepted by the City of Elk Grove on July 22, 2009.

27 |      20.    Katelin's government tort claim was rejected on August 3, 2009.

28 | //

## FACTUAL ALLEGATIONS

21.     Tamara Dumas is a 44 year-old married mother of four. She stands approximately 5'5" tall and has a medium build. Tamara has no criminal record.

22.     Tamara Dumas was a full- time mother for her youngest two children and the caregiver for her niece. She had a business-hobby of breeding Morgan Horses.

23.     At the time of the incident, Tamara had lived in Elk Grove for the preceding 22 years, the last 14 at a house on Wrangler Drive in Elk Grove.

24.     The Wrangler Drive property was a 5-acre parcel which included a pond, a detached garage, a large barn and extensive fencing and pens for her animals.

25.     Tamara had ten horses at the time. On the date of the incident four were at her Wrangler Drive property and six were being pastured at a nearby piece of property on Canter Drive.

26.     In the early evening of July 1, 2008, Tamara received a telephone call from a neighbor of the Canter Drive property informing her that one of her horses pastured at the Canter Drive property had gotten out and was on Equestrian Drive, not far from Grant Line Road, and that there was a concern over the other horses being pastured at Canter Drive escaping.

27.     Tamara drove with her two daughters, Katelin and Kimberly, then 7 and 5 years old, to Equestrian Drive to deal with the situation.

28.     While there, Tamara exchanged unpleasantries with Canter Drive neighbors about the situation but was able to borrow a rope halter and lead rope from one of the neighbors who had unsuccessfully attempted to gain control of the horse which had gotten out.

29.     Tamara was quickly able to regain control of her horse and with her children in the car, successfully shepherded her horse back to her Wrangler Drive residence, driving along side the horse.

30.     Another of the Canter Drive neighbors offered to follow her home to make sure she arrived safely and to also return the halter that Tamara had borrowed, but Tamara

1   declined the offer as being unnecessary and she stated that she would return the halter

2   herself later. The value of a new rope halter and lead rope was less than twenty dollars.

3        31.    Prior to Tamara arriving at the Canter Drive property to deal with her horse,

4   a Canter Drive neighbor had called Animal Control; however, as no animal control officer

5   was available, Diaz was dispatched instead.

6        32.    Officer Diaz arrived on Equestrian Drive shortly after Tamara had left with

7   the horse.  In speaking with the neighbors, there was a discussion regarding the situation

8   and when they would get their lead rope and halter back.

9        33.    Tamara arrived home safely with the horse and parked her car in front of the

10   detached garage.  She told her daughters to sit tight.  She was going to deal with securing

11   the horse, which she did, and ran into the house to get an appropriate phone number to call

12   her son for help, use the bathroom and return quickly.

13        34.    Tamara used the bathroom and called her son, while keeping an eye on her

14   children from the house.  Just before she was going to go back outside to deal with her

15   children, she heard a loud banging at her front door.

16        35.    Tamara went to the door, opened it and saw Diaz standing there.  Diaz

17   seemed angry and asked a string of questions about Tamara's identity and the "halter."  She

18   told Diaz that she is Tamara Dumas and rhetorically asked him if they could continue their

19   conversation after she got her kids who were still in the car.

20        36.    Tamara started to shut the door.  Diaz blocked the door from closing with

21   his boot, pushed the door back open, lunged forward, entered the house and grabbed

22   Tamara, who was still inside her home.  Tamara protested and told him to "Get out of my

23   house."   Diaz was undeterred by her objections and proceeded to twist her left arm behind

24   her back, turn her around, push her outside of her house and take her to the ground, face

25   down outside of her front door on the front porch.  Tamara's face and body were smashed

26   on the concrete step outside the front door.

27        37.    During Diaz's assault and battery of Tamara, Tamara's daughter, Katelin,

28   got out of the car and unfortunately saw the officer attacking her mother.

38.     After smashing Tamara's face and body on the concrete step, Diaz put his body weight on Tamara's back, his knee between her legs and wrenched her right arm up behind her back, as her left one was now pinned under her body.  He repeatedly slammed his body weight onto Tamara while she was on the ground.

39.     Diaz called for other officers by radio while giving the false impression that he was fighting for his life while he physically pummeled Tamara until the other officers arrived.  As the officers were arriving, Tamara was loudly expressing her concern for her children and her disapproval of Diaz's entry into her home.

40.     Elk Grove Officers Kahlil, McDaniel and Sgt. Smith joined in to "help" Diaz; and after handcuffing Tamara, hauled her to Khalil's patrol car and put her into the backseat with the windows shut and no air conditioning running, despite it being a summer day.  When Tamara later complained about difficulty in breathing due to the heat and the officers' assault, Khalil accommodated her by turning the heater up to its maximum setting.

41.     With Tamara in custody several officers including McDaniel entered her home without a warrant and removed items.

42.     Worried about her children, who were still in her car, Tamara urged the officers to get her daughters out of the car and yelled for them to come to her.

43.     A fire truck was called to see if Tamara needed immediate medical attention for her injuries. Tamara was taken to Methodist Hospital, and although she was cleared for incarceration by the hospital, she later received follow-up medical care for her injuries to her wrists, back and knee and well as counseling.

44.     Sergeant Smith took control of the situation after his arrival. Smith spoke with Tamara's husband, who had arrived while Tamara was still on scene, and informed her husband that he had already determined that his officers had acted completely appropriately in their interaction with his wife.

45.     Officer Khalil, realizing the legal precariousness of the situation that he, Diaz and the other officers were in due to the warrantless entry and arrest, went to contact the neighbors who had originally called the police, in an attempt to create a citizens' arrest

1    after the fact, so as to provide some insulation for their conduct.  In the course of the

2    conversation with the neighbors, Khalil told the neighbors that Tamara was

3    "Disrespectful," that "You want her arrested," "I will request that she also needs to be

4    charged with battery," and that "They can sue her." And, ultimately, he convinced one of

5    them to sign a citizen's arrest form despite his having told Khalil multiple times earlier in

6    their conversation that he had neither conveyed nor intended that in his earlier discussions

7    with Diaz. At the end of the conversation, two of the neighbors remarked that Khalil had

8    extraordinary salesmanship abilities.

9       46.    The actions of these deputies caused Tamara to be detained and taken to jail

10   and baseless criminal charges to be brought against her for resisting an officer.  Tamara

11   suffered severe emotional distress and incurred legal fees defending against this unfounded

12   charge, which was prior to trial after the District Attorney's office realized the illegal

13   conduct surrounding the arrest.

14      47.    As a result of the psychological effect that this incident has had on Tamara

15   Dumas, plaintiffs Rick, Katelin, and Kimberly Dumas have been unable to re-establish

16   their previously healthy relationship with their wife and mother.

17      48.    Defendants City of Elk Grove, Simmons and Smith failed to provide proper

18   training, supervision, guidelines, policies, procedures and discipline regarding wrongful

19   arrest and the use of force to City of Elk Grove Police Department employees.  As a result

20   of the defendants' actions described herein, plaintiffs suffered physical injuries, emotional

21   distress and anguish, incurred criminal defense fees and suffered other injuries.

22                    **FIRST CAUSE OF ACTION**
                    **Unreasonable Seizure/Wrongful Arrest**
23         **(Violation of the Fourth Amendment to the U.S. Constitution:**
                    **Actionable under 42 U.S.C. §1983)**
24   *(Brought by plaintiff Tamara Dumas against defendants Diaz, Khalil and Does 1 through 10)*
25
        49.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 48, as
26   though fully set forth herein.
27
        50.    The aforementioned acts and/or omissions of the defendants as alleged
28

Dumas- Complaint for Violation of Civil Rights and State Law; Jury Trial Demanded                8

1   herein, including but not limited to the arrest of plaintiff Tamara Dumas when she had not

2   engaged in any wrongdoing, constituted a wrongful arrest and violated plaintiff's rights as

3   protected by the Fourth through the Fourteenth Amendment of the United States

4   Constitution.

5       51.    As a direct and proximate result of the aforementioned acts, plaintiff Tamara

6   Dumas suffered damages as alleged herein.

7       52.    The aforementioned acts and/or omissions of the individually named

8   defendants were malicious, reckless and/or accomplished with a conscious disregard of

9   plaintiffs' rights thereby entitling plaintiff Tamara Dumas to an award of exemplary and

10  punitive damages.

11
### SECOND CAUSE OF ACTION
**Unreasonable Seizure/Wrongful Arrest**
12
**(Violation of the Cal. Constitution Art. I §§ 1, 7, 13 and Cal. Civil Code § 43)**
13
**Actionable under Cal. Civil Code § 52.1(b)/Bane Act)**
*(Brought by plaintiff Tamara Dumas against defendants City of Elk Grove, Diaz, Khalil*
14
*and Does 1 through 10)*

15      53.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 52, as

16  though fully set forth herein.

17      54.    The actions of defendants, as alleged herein, interfered with the exercise and

18  enjoyment of plaintiff Tamara Dumas's civil rights as guaranteed by Article I §§ 1, 7 and

19  13 of the California Constitution.  Specifically, defendants, and each of them, interfered

20  with plaintiff's rights when defendants arrested plaintiff, without probable cause to believe

21  she had engaged in any criminal wrongdoing.

22      55.    Defendants actions constituted an unreasonable seizure, an excessive use of

23  force, a violation of plaintiff Tamara Dumas's right to bodily integrity, and further

24  interfered with plaintiff's personal rights as guaranteed by § 43 of the California Civil

25  Code.

26      56.    As a direct and proximate result of said acts and/or omissions by defendants,

27  plaintiff suffered unreasonable interference with her personal liberty, emotional distress

28  and other injuries.

57.    The aforementioned acts and/or omissions of said defendants were willful, intentional, wanton, reckless and/or accomplished with a conscious disregard of plaintiff's rights entitling plaintiff to an award of exemplary and punitive damages.

**THIRD CAUSE OF ACTION**
**Unreasonable Seizure/Excessive Force**
**(Violation of the Fourth Amendment to the U.S. Constitution:**
**Actionable under 42 U.S.C. §1983)**
*(Brought by plaintiff Tamara Dumas against defendants Diaz, Khalil, McDaniel, Smith, and Does 1 through 10)*

58.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 57, as though fully set forth herein.

59.    The actions of defendants, as alleged herein, interfered with the exercise and enjoyment of plaintiff Tamara Dumas's civil rights as guaranteed by the Fourth Amendment to the U.S. Constitution.  Specifically, defendants, and each of them, used excessive force upon plaintiff Tamara Dumas.

60.    As a direct and proximate result of said acts by defendants, plaintiff Tamara Dumas suffered unreasonable interference with her personal liberty, emotional distress and other injuries.

61.    The aforementioned acts and/or omissions of said defendants were willful, intentional, wanton, reckless and/or accomplished with a conscious disregard of plaintiff's rights entitling plaintiff to an award of exemplary and punitive damages.

**FOURTH CAUSE OF ACTION**
**Unreasonable Seizure/Excessive Force**
**(Violation of the Cal. Constitution Art. I §§ 1, 7, 13 and Cal. Civil Code § 43:**
**Actionable under Cal. Civil Code § 52.1(b)/Bane Act)**
*(Brought by plaintiff Tamara Dumas against defendants City of Elk Grove, Diaz, Khalil, McDaniel, Smith, and Does 1 through 10)*

62.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 61, as though fully set forth herein.

63.    The actions of defendants, as alleged herein, interfered with the exercise and enjoyment of plaintiff Tamara Dumas's civil rights as guaranteed by Article I §§ 1, 7 and 13 of the California Constitution.  Specifically, defendants, and each of them, interfered

1   with plaintiff's rights when defendants used unjustified force.

2   64.   Defendants actions constituted an unreasonable seizure, an excessive use of

3   force, a violation of plaintiff  Tamara Dumas's right to bodily integrity, and further

4   interfered with plaintiff's personal rights as guaranteed by § 43 of the California Civil

5   Code.

6   65.   As a direct and proximate result of said acts and/or omissions by defendants,

7   plaintiff Tamara Dumas suffered unreasonable interference with her personal liberty,

8   physical injury, pain and suffering, medical expenses, emotional distress and other injuries.

9   66.   The aforementioned acts and/or omissions of said defendants were willful,

10   intentional, wanton, reckless and/or accomplished with a conscious disregard of plaintiff's

11   rights entitling plaintiff to an award of exemplary and punitive damages.

12
### FIFTH CAUSE OF ACTION
13   **Due Process Violation-Fourteenth Amendment**
**(42 U.S.C. Section 1983)**
14   *(Brought by plaintiffs Rick Dumas, Katelin Dumas, and Kimberly Dumas against defendants*
*Diaz, Khalil, McDaniel, Smith, and Does 1 through 10)*
15

16   67.   Plaintiffs re-allege and incorporate by reference paragraphs 1 through 66, as

17   though fully set forth herein.

18   68.   The defendants' actions violated the Fourteenth Amendment of the United States

19   Constitution in that defendants temporarily deprived plaintiffs of their rights to familial

20   companionship by violently attacking and wrongfully arresting Tamara Dumas, causing her

21   severe emotional distress, which resulted in plaintiffs Rick Dumas, Katelin Dumas, and

22   Kimberly Dumas being unable to re-establish their previously healthy relationship with Tamara.

23   69.   As a direct and proximate result of said acts and/or omissions of defendants,

24   plaintiffs suffered a loss of the companionship of their wife and mother.  Furthermore, said acts

25   were a proximate cause of plaintiffs' damages and injuries alleged herein.

26   70.   The aforementioned acts and/or omissions of the non-entity defendants were

27   malicious, reckless and/or accomplished with a conscious disregard of plaintiffs' rights thereby

28   entitling plaintiffs to awards of exemplary and punitive damages according to proof.

### SIXTH CAUSE OF ACTION
**Entity Liability/Unconstitutional Policies and Practices**
**(*Monell* claim: Actionable under 42 U.S.C. §1983)**
*(Brought by plaintiff Tamara Dumas against defendants City of Elk Grove, Simmons, and Does 11 through 20)*

71.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 70, as though fully set forth herein.

72.    The aforementioned acts of the individually named defendants in wrongfully entering, searching and arresting Tamara Dumas in her home for a misdemeanor offense, using excessive force, without a warrant or consent and not for an offense not committed in an officer's presence violated plaintiffs' constitutional rights and were done pursuant to policies, customs and/or practices of defendants City of Elk Grove, Simmons and Does 11 through 20.

73.    Such policies, customs and/or practices include, but are not limited to, an ongoing pattern of deliberate indifference to the rights and privileges of citizens of the city of Elk Grove to be free of excessive force, wrongful arrests and detentions and illegal warrantless entry and search.

74.    As a direct and proximate result of the aforementioned customs, policies and/or practices of said defendants, plaintiffs suffered injuries and damages as alleged herein.

### SEVENTH CAUSE OF ACTION
**Entity/Supervisory Liability**
**(42 U.S.C. Section 1983)**
*(Brought by plaintiff Tamara Dumas against defendants City of Elk Grove, Smith, Simmons, and Does 11 through 20)*

75.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 74, as though fully set forth herein.

76.    The aforementioned acts and/or omissions of the individually named defendants in wrongfully entering, searching and arresting Tamara Dumas inside of her home without a warrant on a misdemeanor charge not committed in their presence and violating her constitutional rights were done pursuant to policies, customs and/or practices

1    of Defendants City of Elk Grove, Chief Simmons, Sergeant Smith and Does 11 through 20.

2         77.      Such policies, customs and/or practices include, but are not limited to, an

3    ongoing pattern of deliberate indifference to the rights and privileges of persons residing in

4    the city of Elk Grove to be free of wrongful arrests, illegal searches and seizures and

5    excessive force.

6         78.      Defendants City of Elk Grove, Chief Simmons, Sergeant Smith and Does 11

7    through 20, and each of them, tacitly encouraged, ratified and/or approved of the unlawful

8    arrest of plaintiff Tamara Dumas, and the officers' use of excessive force as alleged herein

9    and knew or should have known that such conduct was unjustified and would result in

10    violations of plaintiffs' constitutional rights.

11         79.      The customs, policies and/or practices of said defendants, and each of them,

12    were a direct and proximate cause of the injuries suffered by plaintiffs, in that said

13    defendants tacitly encouraged, ratified and/or approved of the violation of plaintiffs' rights

14    and/or failed to adequately train and supervise their officers and/or employees to prevent

15    the occurrence of the constitutional violations alleged above.

16         80.      As a direct and proximate result of the aforementioned customs, policies

17    and/or practices of said defendants, plaintiffs suffered injuries and damages as alleged

18    herein.

19

### EIGHTH CAUSE OF ACTION
**Battery – California State Law**
*(Brought by plaintiff Tamara Dumas against defendants City of Elk Grove, Diaz, Khalil, McDaniel, Smith, and Does 1 through 10)*

22         81.      Plaintiffs re-allege and incorporate by reference paragraphs 1 through 80, as

23    though fully set forth herein.

24         82.      The conduct of defendants, as alleged herein, including but not limited to

25    forcing Tamara Dumas out of her home and throwing her face down and pummeling her

26    was without legal justification.

27         83.      Defendants' conduct was wrongful, intentional, and with willful disregard

28    for plaintiff's rights. This brutal use of force constituted a battery.

1     84.    Said conduct was a proximate cause of plaintiff's damages and injuries as

2   alleged herein.

3     85.    Defendant City of Elk Grove is vicariously liable for the conduct of its

4   agents, all individual defendants named herein.

**NINTH CAUSE OF ACTION**
**Negligence – California State Law**
*(Brought by plaintiff Tamara Dumas against defendants City of Elk Grove, Diaz, Khalil,*
*McDaniel, Smith, and Does 1 through 10)*

8     86.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 85, as

9   though fully set forth herein.

10    87.    Defendants, and each of them, owed plaintiff Tamara Dumas a duty of care.

11  Specifically, defendants had a duty to refrain from unlawfully and wrongfully subjecting

12  persons to unlawful arrests and excessive force, including placing them in a patrol car in

13  July with the windows up and then turning on the heater in response to complaints about

14  inability to breathe, such as plaintiff Tamara Dumas in this action. Defendants, and each of

15  them, breached their duties of care to plaintiff Tamara Dumas. Defendants were negligent

16  in their use of force against Tamara, in their failure to summon medical care for her and in

17  their hiring, training and supervision of City of Elk Grove Police Department officers and

18  staff as well as other actions or inactions as alleged herein.

19    88.    Defendants, and each of them, breached their duties of care owed to

20  plaintiffs, causing plaintiffs injury. As a direct and foreseeable result of defendants'

21  negligent acts plaintiffs suffered injuries.

22    89.    Defendant City of Elk Grove is vicariously liable for the conduct of its

23  agents, all individual defendants named herein.

**TENTH CAUSE OF ACTION**
**Intentional Infliction of Emotional Distress**
*(Brought by plaintiff Katelin Dumas against*
*defendants City of Elk Grove, Diaz, Khalil, McDaniel, Smith, and Does 1 through 10)*

27    90.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 89, as

28  though fully set forth herein.

91.   The conduct of defendants as alleged herein, including but not limited to forcing Tamara Dumas out of her home and throwing her face down and pummeling her was outrageous.

92.   Defendants intended to cause plaintiff Katelin Dumas emotional distress or acted with reckless disregard of the probability that she would suffer emotional distress.

93.   Plaintiff Katelin Dumas suffered severe emotional distress.

94.   The conduct of defendants was a substantial factor in causing plaintiff severe emotional distress.

95.   Defendant City of Elk Grove is vicariously liable for the conduct of its agents, all individual defendants named herein.

## ELEVENTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress
*(Brought by plaintiff  Katelin Dumas against*
*defendants City of Elk Grove, Diaz, Khalil, McDaniel, Smith, and Does 1 through 10)*

96.   Plaintiffs re-allege and incorporate by reference paragraphs 1 through 95, as though fully set forth herein.

97.   Defendants negligently caused injury to Katelin Dumas

98.   Plaintiff Katelin Dumas, who is the daughter of Plaintiff Tamara Dumas, was present at the scene of the injury when it occurred and was aware that Tamara Dumas was being injured.

99.   Plaintiff Katelin Dumas suffered severe emotional distress as a result of witnessing these events.

100.   The conduct of defendants was a substantial factor in causing Plaintiffs' serious emotional distress.

101.   Defendant City of Elk Grove is vicariously liable for the conduct of its agents, all individual defendants named herein.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for the following relief:

1    1.    For compensatory, general and special damages against each defendant,

2  jointly and severally, to the extent permitted by law, in the amount proven at trial;

3    2.    For punitive and exemplary damages against each non-entity defendant, as

4  allowed by law, in an amount appropriate to punish defendants and deter others from engaging

5  in similar misconduct;

6    3.    For costs and reasonable attorneys' fees as provided by law, including, but not

7  limited to 42 U.S.C. §1988 and Cal. Civil Code § 52.1; and

8    4.    For such other relief as the Court deems just and proper.

9

10  Dated: August 27, 2009                    Respectfully submitted,

11

12                                    /s/ Stewart Katz
                                      STEWART KATZ,
13                                    Attorney for Plaintiff

14                        **DEMAND FOR TRIAL BY JURY**

15    Plaintiffs Tamara Dumas, Rick Dumas, Katelin Dumas, and Kimberly Dumas

16  hereby demand trial by jury.

17  Dated:  August 27, 2009                    /s/ Stewart Katz
18                                    STEWART KATZ,
                                      Attorney for Plaintiff
19

20

21

22

23

24

25

26

27

28

EXHIBIT B

# SETTLEMENT AGREEMENT
# AND
# RELEASE OF ALL CLAIMS

This Settlement Agreement and Release (the "Agreement") is made and entered into by and among Tamara Dumas, Rick Dumas, Kimberly Dumas, and Katelin Dumas (collectively referred to as "Plaintiffs") and Defendant City of Elk Grove ("Defendant" or "City") with respect to the following facts.

## RECITALS

A.     On June 8, 2009 Plaintiff Tamara Dumas filed a civil complaint in the United States District Court, Eastern District of California, Case No. 2:09-cv-01573-GEB-JFM ("the Action") against Defendants City of Elk Grove, Christopher Diaz, Ali Khalil, Lance McDaniel, Wally Smith, and Robert Simmons (collectively referred to as "Defendants") alleging a series of causes of action stemming from an incident that occurred on July 1, 2008.  Thereafter a First Amended Complaint was filed on August 27, 2009 which added Rick Dumas, Kimberly Dumas and Katelin Dumas as Plaintiffs.  Defendants filed an Answer to the First Amended Complaint, denying and disputing Plaintiffs' claims and allegations in their entirety.

B.     In order to avoid the substantial expense and inconvenience of further litigation, the parties now desire to finally settle all claims asserted in, as well as all issues that were raised or could have been raised in the Action on the terms set forth in this Agreement

THEREFORE, IN CONSIDERATION OF THE PROMISES CONTAINED HEREIN, IT IS HEREBY AGREED AS FOLLOWS:

1.     Payment.   In exchange for the promises and warranties of Plaintiffs as set forth below, the City agrees to pay the total sum of $105,000.00 to Plaintiffs and their attorney of record, Stewart Katz, to be distributed in separate checks as follows:

| | |
|---|---|
| Tamara Dumas: | $70,000.00 |
| Katelin Dumas: | $5,000.00 |
| Kimberly Dumas: | $5,000.00 |
| The Law Office of Stewart Katz | $25,000.00 |

Rick Dumas will not receive any payment in resolution of the claims asserted by him in the Action.

The resolution of the claims of the minors (Katelin Dumas and Kimberly Dumas) will be presented to the Court for approval by way of a petition for a minor's compromise.  The City also agrees that it will not oppose a Petition for Factual Innocence ("Petition") which will be filed by Stewart Katz for Tamara Dumas.

2.     General Release of All Claims.  In consideration of the payments called for herein, Plaintiffs unconditionally, irrevocably and absolutely release and forever discharge

Defendants, as well as any other present or former employees, officers, agents, attorneys, affiliates, successors, assigns and all other representatives of Defendants (collectively, "Released Parties"), from any and all causes of action, judgments, liens, indebtedness, damages, losses, claims (including attorneys' fees and costs), liabilities and demands of any kind and character that Plaintiffs may now or hereafter have against the Released Parties arising from incidents or events alleged in or resulting from the Action (hereafter collectively, "Released Claims"). To the extent permitted by law, this release is to be interpreted broadly to apply to all transactions and occurrences between Plaintiffs and any Released Party and all other losses, liabilities, claims, charges, demands and causes of action, known or unknown, suspected or unsuspected, arising out of or in any way connected with the Action and/or these transactions or occurrences. Released Claims include, without limitation, any claim based in tort, contract, common law, the state or federal Constitution, state or federal statutes, all claims for physical injuries, illness, damage or death, and all claims, including such claims as  may arise under contract, state or federal law, for attorneys' fees, costs and expenses.

3.     <u>Unknown or Different Facts or Law</u>.   Plaintiffs acknowledge that they may discover facts or law different from, or in addition to, the facts or law they know or believe to exist with respect to a Released Claim. Plaintiffs agree, nonetheless, that this Agreement and the releases contained in it shall be and remain effective in all respects notwithstanding such different or additional facts or law.

4.     <u>California Civil Code Section 1542 Waiver</u>.   Plaintiffs expressly acknowledge and agree that the releases contained in this Agreement include a waiver of all rights under Section 1542 of the California Civil Code, which reads:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OF OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Plaintiffs acknowledge that they have read this Agreement in its entirety, including the above Civil Code section, and that they fully understand both the Agreement and the Civil Code section. Plaintiffs waive any benefits and rights granted to them pursuant to Civil Code section 1542.

5.     <u>Dismissal of the Action</u>. Plaintiffs and their attorney Stewart Katz included as part of this agreement agree to take all actions necessary to dismiss the entire Action, with prejudice, as soon as possible after receipt of the settlement check by their counsel, including, but not limited to, executing and filing two Requests for Dismissal of the Action with Prejudice, with the United States District Court, Eastern District of California.   One Request will be for the dismissal of the individual Defendants (Diaz, Khalil, McDaniel, Smith and Simmons) and the other will be for the dismissal of the City.  Plaintiffs agree that they will not negotiate the

settlement checks until the executed dismissals are filed with the Court. Attorney Stewart Katz will make sure the executed dismissals are filed with the Court.

6.    No Prior Assignments or Liens. Plaintiffs represent and warrant that they have not assigned to any other person or entity any Released Claim. Plaintiffs further represent and warrant there are no liens or claims against any of the amounts being paid by the City as provided in this Agreement. Plaintiffs agree to defend, indemnify and hold the Defendants and their insurance company harmless from any liability, losses, claims, damages, costs or expenses, including reasonable attorneys' fees, arising out of a breach of the representations and warranties contained in this paragraph.

7.    No Admissions. By entering into this Agreement, neither Plaintiffs nor the City admit that they have engaged in, or are now engaging in, any unlawful conduct or practice. Plaintiffs are settling this case while continuing to maintain that defendants acted wrongfully as alleged in the Action. It is understood and agreed that this Agreement is not an admission of liability and/or fault, and that the Parties specifically deny liability and/or fault in the Action and intend merely to avoid further litigation and expense by entering into this Agreement. The parties agree that it is their mutual intention that neither this Agreement nor any terms hereof shall be admissible in any other or future proceedings against the Defendants, except a proceeding to enforce this Agreement.

8.    No Future Civil Actions. Plaintiffs agree to the fullest extent permitted by law that they will not bring, or allow to be brought on their behalf, in any administrative agency or court, whether state or federal, any Released Claim as set forth in paragraph 2 as their successor in interest or otherwise. If any such action is brought, this Agreement will constitute an Affirmative Defense thereto, and the Defendants shall be entitled to recover reasonable costs and attorneys' fees incurred in defending against any Released Claim as set forth in paragraph 2.

9.    Severability. Should a court determine that any term of this Agreement is unenforceable, that term shall be deemed to be deleted. However, the validity and enforceability of the remaining terms shall not be affected by the deletion of the unenforceable terms.

10.    Attorneys' Fees and Costs. Except for the $25,000.00 identified in paragraph 1 of this Agreement that the City has agreed to pay to the Law Office of Stewart Katz, Plaintiffs, and their heirs, executors, administrators, principals, employees, representatives, agents, assigns and successors and the Defendants agree to bear their own attorneys' fees and expenses incurred in connection with the Action.

11.    Modifications. This Agreement may be amended only by a written instrument executed by all parties hereto.

12.    Cooperation. The parties agree to do all things necessary and to execute all further documents necessary and appropriate to carry out and effectuate the terms and purposes of this Agreement.

13.   <u>Interpretation; Construction</u>.  The headings set forth in this Agreement are for convenience only and shall not be used in interpreting this Agreement.  This Agreement has been drafted by legal counsel representing the Defendants, but Plaintiffs have participated in the negotiation of its terms.  Plaintiffs acknowledge that they have had an opportunity to review and discuss each term of this Agreement with legal counsel and, therefore, the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement.

14.   <u>Entire Agreement</u>.  The parties to this Agreement declare and represent that no promise, inducement or agreement not herein discussed has been made between the parties, and that this Agreement contains the entire expression of agreement between the parties on the subjects addressed herein.

15.   <u>Advice of Counsel</u>. The parties declare and represent that they are executing this Agreement having had the opportunity to obtain the full advice of their respective legal counsel, and that they intend this Agreement to be complete and shall not be subject to any claim of mistake, and that the releases herein express a full and complete release and, regardless of the adequacy or inadequacy of the consideration, each intends the releases herein to be final and complete.

16.   <u>Tax Consequences</u>.  The City has made no representation about and takes no position on the tax consequences of this Agreement.  A dispute regarding the tax status of this Agreement shall not affect the validity of this Agreement. Plaintiffs have had an opportunity to discuss the potential tax consequences of this Agreement with their own counsel or tax preparer and agree to indemnify and hold harmless the Defendants and/or their agents from any and all costs and assessments including, but not limited to delinquent taxes, penalties and/or assessments levied against the Defendants in connection with this Agreement.

17.   <u>Condition Precedent</u>.  This Agreement shall not be binding on the City unless and until the City Council has formally approved of this settlement and such formal approval has been communicated to counsel for Plaintiffs.  The City will initiate the process for seeking this formal approval upon the receipt by the Defendants' counsel of a copy of this Agreement executed by Plaintiffs.  If the Agreement is ultimately not approved by the City when it is submitted to the City for approval, then the Agreement will not be binding upon Plaintiffs after they have been advised through their counsel that the City did not approve the Agreement.

18.   <u>Governing Law</u>.  This Agreement is made and entered into in the State of California and shall in all respects be interpreted, enforced and governed under the laws of the State of California.

19.   <u>Effectiveness.</u> This Agreement shall become effective immediately following execution by each of the Parties and entry of the Orders Approving Compromise of Minors' Claim by the United States District Court, Eastern District of California.

20.   <u>Counterparts</u>.  This Agreement may be executed in counterparts.  The execution of a signature page of this Agreement shall constitute the execution of the Agreement, and the Agreement shall be binding on each party upon that party's signing of such a counterpart.

**WHEREFORE, PLAINTIFFS HAVE VOLUNTARILY EXECUTED THIS AGREEMENT ON THE DATE SHOWN BELOW.**

Dated: _____          _____

Kimberly Dumas by and through her parent(s) and representative(s), Tamara Dumas and/or Rick Dumas

Dated: _____          _____

Katelin Dumas by and through her parent(s) and representative(s), Tamara Dumas and/or Rick Dumas

Dated: _____          _____

Tamara Dumas

Dated: _____          _____

Rick Dumas

Dated: _____          _____

Laura Gill, City Manager
City of Elk Grove

APPROVED AS TO FORM AND SUBSTANCE:

Dated:_____          LAW OFFICES OF STEWART KATZ


By_____
     Stewart Katz,
     Attorney for Plaintiffs

Dated: _____

PORTER SCOTT
A Professional Corporation

By_____
        Michael W. Pott,
        Attorney for Defendants

EXHIBIT *C*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

--oOo--

TAMARA DUMAS; RICK DUMAS; )
KATELIN DUMAS; and KIMBERLY )
DUMAS, )
                 )
       Plaintiffs, )   No. 2:09-cv-01573
                 )   GEG-JFM
   vs. )
                 )
CITY OF ELK GROVE; Elk Grove )
Police Officer CHRISTOPHER )
DIAZ (Badge #127); Elk Grove )
Police Officer ALI KHALIL )
(Badge #164); Elk Grove )
Police Officer LANCE McDANIEL)
(Badge #158); Elk Grove )
Police Sergeant WALLY SMITH )
(Badge #23); Elk Grove Police)
Chief ROBERT SIMMONS; and )
DOES 1 through 20, inclusive,)
                 )
       Defendants. )
                 )

**CERTIFIED COPY**

WEDNESDAY, MAY 5, 2010

10:10 A.M.

DEPOSITION OF TAMARA DUMAS

Reported By:         Janice L. Vassar-Locke, CSR 7257

Ref. #20878

RECEIVED
DTH  HD
MAY 14 2010
8:55
PORTER | SCOTT
ATTORNEYS

DEPOSITION OF TAMARA DUMAS

1      Q   I'll join you over there because I want to

2   reference the map that's over there.

3      A   Okay.

4      Q   Can you indicate -- or let me grab you an

5   additional pen.  Can you indicate -- I don't know if you

6   can see it on the map -- where you took the horse when you

7   got back to your property?  Or if you could show me the

8   path that you took.  Just draw, you can draw a line right

9   on there.

10      A   And you want to know where I took the horse?

11      Q   Let the record reflect that she drew a line down

12   what appears to be her driveway and then a box.  At the

13   end of the box is your vehicle?

14      A   Yes.

15      Q   If you could draw an arrow alongside the vehicle

16   with which direction it was facing when you pulled in.

17      A   Well --

18      Q   That way, okay.

19         MR. KATZ:  After this diagram can we take a short

20   break?  But why don't you finish your questions up on this

21   exhibit.

22      Q   BY MR. HAYNES:  It appears as though you've drawn

23   your car where you pulled off.  If you're facing the front

24   of the house you've gone off to the right-hand side of

25   this, of the property?

46

DEPOSITION OF TAMARA DUMAS

1      A  Yes.

2      Q  And what building is that that you've drawn the

3  vehicle next to?

4      A  That's a detached four-car garage.

5      Q  And where did you take the horse from there?

6      A  Do you want me to draw it?

7      Q  Please.

8      A  I took the horse and put her here.

9      Q  Okay.  Let the record reflect she's placed an X

10  on the diagram where she's, where she took the horse.

11         And during this time were your kids still in the

12  vehicle?

13     A  Yes.

14     Q  Okay.  How long did it take you from when you

15  exited the vehicle with the horse until the time you got

16  back to the vehicle where your children were?

17     A  Less than five minutes.

18     Q  Okay.

19        MR. KATZ:  Is this a good time for a --

20        MR. HAYNES:  Sure.

21        (Thereupon a short recess was taken.)

22        (Thereupon Defendant's Exhibit Number 4 was

23  marked and attached to the deposition.)

24     Q  BY MR. HAYNES:  When we left off I think you just

25  indicated where you had parked your car and taken the

47

DEPOSITION OF TAMARA DUMAS

1   horse after returning to your property.

2          What happened next after you, after you took the

3   horse to where you've indicated there on the map?

4      A  I went into my barn to get more halters and lead

5   ropes.

6      Q  And where is your barn located on that map, if

7   you could circle it, please.

8      A  (Indicating.)

9      Q  And what did you do next?  Did you actually get

10  the halters and lead ropes?

11     A  I grabbed three or four halters and lead ropes.

12     Q  Okay.  And then what did you do?

13     A  I walked back to the car and talked with my

14  girls, made sure they were okay.

15     Q  Do you remember anything specifically that you

16  said to them?

17     A  Just specifically I can't remember, but I asked

18  them to wait for me, that I'd be right back.

19     Q  And I believe earlier you mentioned -- how long

20  was it between the time that you left the car with the

21  horse and the time when you returned to check on them?

22     A  Less than five minutes.  It was quick.

23     Q  Was the car still running at this time?

24     A  Yes.

25     Q  And what did you do next after you spoke with

48

DEPOSITION OF TAMARA DUMAS

1   them?

2       A   I walked to the back side of my house --

3       Q   Okay.

4       A   -- to enter my home to use the restroom.

5       Q   All right.  Where is the rear exit on your house?

6   I know it's --

7       A   Well --

8       Q   If you could show the path that you took to get

9   there and then where the entrance would have been.

10      A   Right here.

11      Q   Okay.  Let the record reflect she's placed a

12  small arrow in the location where she entered the house on

13  the rear, right-hand side of the house if you're looking

14  at it from the front.

15          Okay.  And is that a typical location where you

16  enter or exit your home?

17      A   Yes.

18      Q   Was it locked?

19      A   No.

20      Q   And you may have already mentioned this, what did

21  you go inside the house to do?

22      A   To go to the bathroom and to get my son's

23  friend's phone number off of the -- it's caller I.D.

24      Q   What did you do first when you walked in?

25      A   I walked straight into the kitchen and grabbed

                                                              49

DEPOSITION OF TAMARA DUMAS

1          Pursuant to Section 2025.520 of the Code of Civil

2    Procedure of the State of California, I hereby certify

3    that I have read my deposition transcript, made the

4    changes and corrections that I deem necessary, and approve

5    the same as now true and correct.

6

7          Dated this_____day of_____, 2010

8

9

10

11                    _____

12                    TAMARA DUMAS

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                          237

1        CERTIFICATE OF CERTIFIED SHORTHAND REPORTER

2          I, JANICE L. VASSAR-LOCKE , a Certified Shorthand

3  Reporter, licensed by the State of California, being

4  empowered to administer oaths and affirmations pursuant

5  to Section 2093(b) of the Code of Civil Procedure, do

6  hereby certify:

7          That the witness named in the foregoing

8  deposition was present at the time and place specified;

9          That the witness was by me sworn to testify to

10  the truth, the whole truth and nothing but the truth;

11          That the said proceeding was taken before me, in

12  shorthand writing, and was thereafter transcribed, under

13  my direction, by computer-assisted transcription;

14          That the foregoing transcript constitutes a full,

15  true, and correct report of the proceedings which then

16  and there took place;

17          That I am a disinterested person to the said

18  action;

19          IN WITNESS WHEREOF, I have hereunto subscribed my

20  signature on this 13th day of May , 2010.

21

22                                 Vassar-Locke

23                     JANICE L. VASSAR-LOCKE

24                     Certified Shorthand Reporter

25                     California License #7257

DEPOSITION OF TAMARA DUMAS



```
                        Western Reporters
                       775 University Avenue
                    Sacramento, California 95825

                                    May 13, 2010
                                    Ref. No: 20878


Mrs. Tamara Dumas
C/O Mr. Stewart Katz
555 University Avenue, Suite 270
Sacramento, CA   95825

Re: Dumas vs City of Elk Grove, taken on May 5, 2010.


Dear Mrs. Dumas,

        The original transcript of your deposition in the
above-entitled matter is now prepared and filed in our
office.

        If you wish to review your deposition and sign it
you may do so by calling us at (916) 564-5600 to set up an
appointment.  You have 30 days from receipt of this letter
to review your deposition transcript.

        Western Reporters does not release original
transcripts before the 30-day period.  After 30 days we
send original transcripts to the party that noticed the
deposition proceeding.

        If you do not wish to review your deposition,
please sign in the space provided below and return this
letter to us.

Very truly yours,


Janice L. Vassar-Locke


_____        _____

Signature                               Date

Cc:  Derek Haynes, Esq.
     Stewart Katz, Esq.
```

239

1                    WESTERN REPORTERS
                Certified Court Reporters
2

3

4    PORTER | SCOTT
     350 University Avenue, Suite 200
5    Sacramento, CA   95825
     Attention:  Mr. Derek Haynes, Esq.
6

7    Re: Deposition of Tamara Dumas taken on May 5, 2010.

8    Dear Mr. Haynes,

9         The following action has been taken regarding the
     original deposition:
10

          ( ) The sealed original is being forwarded to
11   your office.

12        ( ) The witness declined to read the deposition.

13

          ( ) The witness has signed the attached
14   notification letter.

15

          ( ) The witness has read the deposition and there
16   are no changes.

17

          ( ) The witness has made the attached changes to
18   the deposition.

19

20

21   Cc:  Stewart Katz, Esq.

22

23

24

25

                                                         240

EXHIBIT D

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

--oOo--

RECEIVED
DJH.
JUL 0 1 2010
UPS
PORTER | SCOTT
ATTORNEYS

TAMARA DUMAS,

         Plaintiff,

  vs.

CITY OF ELK GROVE; Elk
Grove Police Officer
CHRISTOPHER DIAZ (Badge
#127); Elk Grove Police
Officer ALI KHALIL (Badge
#164); Elk Grove Police
Officer LANCE MCDANIEL
(Badge #158); Elk Grove
Police Sergeant WALLY
SMITH (Badge #23); Elk
Grove Police Chief ROBERT
SIMMONS; and DOES 1
through 20, inclusive,

        Defendants.
_____/

**CERTIFIED COPY**

No.  2:09-CV-01573-GEB-JFM

--oOo--

Deposition of

ALI KHALIL

Friday, June 18, 2010

--oOo--

Reported by:  Amy E. Perry, CSR License No. 11880

```
 1                    A P P E A R A N C E S

 2

 3      For the Plaintiff:

 4              LAW OFFICE OF STEWART KATZ
                By:  Stewart Katz, Attorney at Law
 5              555 University Avenue, Suite 270
                Sacramento, California  95825
 6              916-444-5678

 7      For the Defendants:

 8              PORTER SCOTT ATTORNEYS
                By:  Derek J. Haynes, Attorney at Law
 9              350 University Avenue, Suite 200
                Sacramento, California  95825
10              916-929-1481

11      Also Appearing:

12              Tamara Dumas, Plaintiff

13              Rick Dumas

14                        --oOo--

15

16

17

18

19

20

21

22

23

24

25
```

```
 1   standing up.  I don't recall.  She stood up and we opted to

 2   go to the back of my patrol car.

 3   Q        And is she talking at this point?

 4   A        She's -- she was crying.  Yes, she was talking.

 5   She kept saying the same things kind of over and over

 6   again.

 7   Q        And what was she saying over and over again?

 8   A        That it was Officer Diaz's fault, or the police

 9   is no good.  It didn't have to be like this.  Something to

10   those regards.  Those kind of wording.

11   Q        Okay.  And as you're walking her back to the

12   patrol car, had you seen anyone else from the Dumas

13   household?  Did you see any other persons besides officers

14   yet?

15   A        I had seen two little girls in the back.  I

16   believe I saw two little girls when I first arrived in the

17   back of the BMW, I think.  From what I can recall, there

18   was two kids in the back of that BMW.

19   Q        Okay.  So, as you're walking her to the patrol

20   car, what's going on?

21   A        She did not want to go to the back of my patrol

22   car.  She was stomping her feet and refusing to walk.

23   Officer Mike Press put her in a wrist lock while I had her

24   right arm, and we encouraged her to walk to the back of my

25   police vehicle.
```

| 1 | the person.  But they're not willing to sign it.  Whatever |
|---|---|

1    the person.  But they're not willing to sign it.  Whatever

2    the circumstances is -- because this -- if this existed or

3    didn't exist, doesn't mean that the person couldn't make

4    that arrest.

5            So, it was just -- it would just make it complete

6    and it gives -- it gives the other party in my opinion, it

7    gives, you know, when they see this in the police report

8    and say, "Oh, okay.  So-and-so did place me under arrest."

9    It's just not this officer that's placing me under arrest

10   because he or she wills.

11   Q       Okay.  Why don't we take another break.  I think

12   we're almost done here.

13           (Whereupon a recess was taken.)

14           THE REPORTER:  I have to get on the record the

15   transcript order.  Would you like a copy?

16           MR. HAYNES:  Yes.

17           THE REPORTER:  Thank you.  And you, normal time?

18           MR. KATZ:  Yeah, that will be fine.

19           (Whereupon the proceedings were

20            concluded at 2:18 p.m.)

21                    --o0o--

22           PLEASE be advised that I have read the foregoing

23   deposition, pages 1 through 91, inclusive.

24   I hereby state there are:

25   _____  NO CORRECTIONS

1    _____CORRECTIONS PER ATTACHED

2    _____/_____

3    (Signature of Witness)                    (Date)

4

5                        --o0o--

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                     REPORTER'S CERTIFICATE

2

3          I, Amy E. Perry, a Certified Shorthand Reporter

4    in and for the State of California, duly appointed and

5    commissioned to administer oaths, do hereby certify:

6          That I am a disinterested person herein; that the

7    witness named in the foregoing deposition, was by me duly

8    sworn to testify the truth; that the deposition was

9    reported in shorthand by me, Amy E. Perry, a Certified

10   Shorthand Reporter of the State of California, and

11   thereafter transcribed into typewriting; that the foregoing

12   is a true and correct record of the testimony given by the

13   witness.

14         IN WITNESS WHEREOF, I hereby certify this

15   deposition at my office in the County of Sacramento, State

16   of California, this 28th day of June            , 2010.

17

18                         _____

19                         AMY E. PERRY, CSR 11880

20

21

22

23

24

25