IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TAMARA DUMAS, et al.,

     Plaintiffs,                        No. CIV 2:09-cv-1573-GEB-JFM

     vs.

CITY OF ELK GROVE, et al.,

     Defendants.               <u>ORDER</u>

          This matter came on for hearing on May 26, 2011 on plaintiffs' motion to quash. Jeremy Cloyd appeared for plaintiffs. Derek Haynes appeared for defendants. Upon review of the motion to quash, defendants' opposition, discussion of the appearing parties and good cause appearing therefor, THE COURT ORDERS AS FOLLOWS:

                              FACTUAL AND PROCEDURAL BACKGROUND

          This action commenced on June 8, 2009 and is proceeding on an amended complaint filed on August 27, 2009. Therein, plaintiffs (Tamara Dumas; her husband, Rick Dumas; and her children, Katelin and Kimberly Dumas[1]) allege that on July 1, 2008 seven police officers and one police explorer arrested Tamara Dumas in her home after a neighbor complained that she had not returned a $20 horse harness he had lent her that day. Tamara

---

[1] The minors are proceeding through their mother, Tamara Dumas, as guardian ad litem.

1

Dumas contends she suffered injuries as a result of excessive force used by the officers during the arrest and that her then-7-year old daughter, Katelin, saw the incident.

Plaintiffs bring suit for unreasonable seizure / wrongful arrest in violation of the Fourth Amendment and the California Constitution; due process violations (on behalf of Rick, Katelin and Kimberly); entity liability / unconstitutional policies and practices pursuant to 42 U.S.C. § 1983; entity / supervisory liability pursuant to 42 U.S.C. § 1983; battery; negligence; and intentional and negligent infliction of emotional distress claims (on behalf of Katelin). Plaintiffs seek damages and costs.

On July 27, 2010, the parties participated in a mediation before retired District Judge Raul Ramirez.  Plaintiffs were represented by Stewart Katz at the mediation.  Although the parties did not settle at the mediation, a mediator's proposal was submitted for consideration by each side.  The following day, the parties agreed to the proposal.

The parties subsequently filed two notices of settlement.  <u>See</u> Doc. Nos. 31-32. Following multiple discussions between counsel to reduce the settlement agreement to writing, negotiations eventually failed.  On October 18, 2010, plaintiffs' attorney, Stewart Katz, filed a motion to withdraw.  On November 5, 2010, defendants filed their first Motion to Enforce Settlement Agreement.  On December 6, 2010, the motion to withdraw as counsel was granted and the motion to enforce the settlement was withdrawn.

On January 13, 2011, new counsel was substituted for plaintiffs.  On January 20, 2011, this new counsel also filed a motion to withdraw.  On April 1, 2011, the motion to withdraw was granted and the attorneys currently representing plaintiffs were substituted.

On April 20, 2011, defendants filed a second Motion to Enforce Settlement Agreement.  This motion is scheduled to be heard before the Honorable Garland E. Burrell on June 6, 2011.

On April 22, 2011, defendants issued a subpoena to Stewart Katz, which calls for Katz to appear at the hearing on their motion to enforce settlement agreement to testify and to

2

1 produce and permit inspecting and copying of the following:

> All documents and/or notes reflecting communications between you and your previous clients Tamara Dumas, Rick Dumas, Katelin Dumas, and Kimberly Dumas regarding the agreement to resolve the above-referenced matter including, but not limited to, all communications authorizing you to agree to the settlement on half of Plaintiffs.

On May 10, 2011, plaintiffs filed the instant motion to quash. On May 24, 2011, defendants filed an opposition.

## DISCUSSION

Plaintiffs bring this motion asserting that the subpoena is improper because it calls for testimony and documents that concern or consist of privileged attorney-client communications and/or documents covered by the work-product doctrine. Plaintiffs contend the privilege has not been waived and no exception applies. Plaintiffs request that the subpoena be quashed. In the alternative, they ask that it be modified so that only testimony and/or documents concerning whether the settlement agreement was effective or binding before signature be permitted.

Defendants assert that plaintiffs will argue in opposition to defendants' motion to enforce the settlement agreement that they never agreed to the terms of the settlement. This argument, they aver, necessarily puts Katz's performance as counsel in question.

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981) (citing 8 J. Wigmore, Evidence § 2290 (McNaughton rev. 1961)). The privilege is intended to "encourage clients to make full disclosure to their attorneys." Fisher v. United States, 425 U.S. 391, 403 (1976). The attorney-client privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." Upjohn Co., 449 U.S. at 395.

The related work product doctrine is codified in Federal Rule of Civil Procedure 26(b)(3), and protects attorneys from being required to divulge materials prepared in anticipation

of litigation. Fed. R. Civ. P. 26(b)(3). It protects the "mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." United States v. Nobles, 422 U.S. 225, 238 (1975). It does not protect from discovery factual information contained within an attorney's papers; rather, only an attorney's "mental impressions, conclusions, opinions, or legal theories" are protected. In re Seagate Tech., 497 F.3d 1360, 1375 (Fed. Cir. 2007), cert. denied, 552 U.S. 1230 (2008).

Federal Rule of Evidence 502 explains that attorney-client privilege and work product protection can be waived by disclosures made during a federal proceeding if:

(1) the waiver is intentional;

(2) the disclosed and undisclosed communications or information concern the same subject matter; and

(3) they ought in fairness be considered together.

Fed. R. Evid. 502. "In general, a party's voluntary disclosure of one or more privileged communications between the party and his attorney waives the privilege as to all communications between the party and his attorney on the same subject." Starsight Telecast, Inc. v. Gemstar Dev. Corp., 158 F.R.D. 650, 653 (N.D. Cal. 1994). It would be unfair to allow a party to disclose facts beneficial to its case, but then assert the attorney-client privilege or work product protection to refuse disclose facts adverse to its case. Id. (citing Hercules, Inc. v. Exxon Corp., 434 F. Supp. 136, 156 (D. Del. 1977)).

A party may also impliedly waive attorney-client privilege and work product protection. See Hearn v. Rhay, 68 F.R.D. 574 (E.D. Wash. 1975). Implied waiver occurs where:

(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

Id. at 581. If waiver occurs, it applies to both attorney-client privilege and work-product immunity. Bittaker v. Woodford, 331 F.3d 715, 722 n.6 (9th Cir. 2003). However, courts

4

narrowly tailor implied waiver to produce only those documents necessary to ensure that the proceedings are fair. Rambus Inc. v. Samsung Elecs. Co., 2007 WL 3444376, at *6 (N.D. Cal. Nov.13, 2007).

Here, defendants argue that plaintiffs impliedly waived the attorney-client privilege by asserting that they did not understand the terms of the settlement agreement. Plaintiffs refute this assertion. In their opposition to defendants' motion to enforce settlement agreement, plaintiffs do not argue that Katz did not have authority to settle or that they did not understand material terms. Instead, they argue that, based on their understanding, certain conditions needed to be met before the settlement became effective, including the execution of a written, signed settlement agreement; the filing of a petition for minor's compromise; and approval of the settlement by the City of Elk Grove. Additionally, Tamara Dumas declares that she became aware that her medical condition was more serious than initially thought, thus making the settlement terms unsatisfactory in light of her medical bills.

The undersigned has considered the arguments presented by plaintiffs and defendants. Upon consideration, the court concludes that this matter depends on issues to be heard at a forthcoming evidentiary hearing before Judge Burrell. Plaintiffs' concerns will be better met by evidentiary rulings in the context of that hearing.

Accordingly, IT IS HEREBY ORDERED that plaintiffs' motion to quash is denied without prejudice to their right to object to documents offered or questions put to Mr. Katz at the evidentiary hearing on defendants' motion to enforce the settlement agreement.

DATED: June 1, 2011.

UNITED STATES MAGISTRATE JUDGE

/014;dumas1573.quash

5